IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KIMBERLY D. WILLIAMS,           )
    Plaintiff,               )
                               )
v.                              )     CIVIL ACTION NO. 17-00346-N
                               )
NANCY A. BERRYHILL, *Acting*    )
*Commissioner of Social Security*, )
    Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly D. Williams brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Upon consideration of the parties' briefs (Docs. 13, 14) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

## I.    *Background*

On September 24, 2014, Williams filed an application for a period of disability and DIB with the Social Security Administration ("SSA"), alleging

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19). With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

disability beginning August 1, 2014.[2]  After her application was initially denied, Williams requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review.  The hearing was held on March 2, 2016.  On June 23, 2016, the ALJ issued an unfavorable decision on Williams's application, finding her not disabled under the Social Security Act and thus not entitled to benefits.  (*See* R. 16 – 37).

The Commissioner's decision on Williams's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on June 29, 2017.  (R. 1 – 5).  Williams subsequently filed this action under § 405(g) for judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light

of all the relevant facts.").[3]  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact.  No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts.  With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him."  *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings).  "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).  Generally, claims of error not raised in the district court are deemed waived.  *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo*

the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB…requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E)…A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Williams met the applicable insured status requirements through December 31, 2017, and that she had not engaged in substantial gainful activity since the alleged disability onset date, August 1, 2014. (R. 21). At Step Two, the ALJ determined that Williams had the following severe

impairments: fibromyalgia, inflammatory arthritis, obesity, degenerative disc disease post fusion, status post left knee arthroscopy, asthma, chronic pain syndrome, depression, and anxiety disorder. (R. 21 – 22). At Step Three, the ALJ found that Williams did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 22 – 24).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Williams had the RFC "to perform light work as

defined in 20 CFR 404.1567(b)[6] except that she is able to stand/walk four hours total in an eight hour workday[;] should never climb ladders, ropes, or scaffolds[;] can climb ramps and stairs[; can] balance, stoop, kneel, crouch, and crawl occasionally[;] can have no exposure to unprotected heights or hazardous machinery[; and] is limited to simple and routine tasks, with occasional changes in work setting and occasional interaction with the public. " (R. 25 – 35).

Based on this RFC, the ALJ determined that Williams was unable to perform any past relevant work. (R. 35). At Step Five, after considering testimony from a vocational expert, the ALJ found that there exist significant numbers of jobs in the national economy that Williams can perform given her RFC, age, education, and work experience. (R. 36 – 37). Thus, the ALJ found that Johnson was not disabled under the Social Security Act. (R. 37).

## IV.   *Analysis*

Williams raises four claims of reversible error. For purposes of flow, the undersigned will address them in a different order than Williams has presented them.

### a.    **First and Second Claims of Error – Medical Opinions**

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4.

or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

Williams's first and second claims of error collectively assert that the ALJ reversibly erred in assigning greater weight to the opinions of two non-examining physicians than the opinions of Williams's treating physicians.[7] It is true that "[t]he opinions of nonexamining, reviewing physicians,…when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). As such, "[t]he good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz*, 825 F.2d at 280. Thus, "[i]f an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record." *Ethridge v. Berryhill*, No. 1:16CV788-WC, 2017 WL 4780619, at *5 (M.D. Ala. Oct. 23, 2017) (Capel, M.J.) (citing cases).[8]

---

[7] "A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502).

[8] *Compare Sharfarz*, 825 F.2d at 280-81 ("As we have observed, the only medical opinions that support the finding that appellant can do medium work are those of the nonexamining, nontreating physicians. The opinions of all of the treating and examining physicians support the contrary finding. The ALJ provided no cause for

Accordingly, Williams is wrong to the extent she argues the ALJ was required as a matter of law to adopt her treating physicians' opinions over those of the non-examining physicians.[9]

---

not according those latter opinions substantial or considerable weight. Thus, his finding that appellant could return to his prior work was not supported by substantial evidence. The case must be remanded to enable the Secretary to reevaluate the medical evidence in accordance with the law."), *with Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (unpublished) ("[T]here is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians…[Thus], the ALJ did not err by giving more credence to Goren's conclusions than to those of Vernacchio and Kantor."), *and Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872-74 (11th Cir. 2011) (per curiam) (unpublished) (holding that ALJ did not err in crediting the opinions of non-examining physicians where their opinions were supported by the record and good cause existed for giving little weight to the treating physician's opinion).

[9] Williams cites *Dillard v. Astrue*, 834 F. Supp. 2d 1325 (S.D. Ala. 2011) (Cassady, M.J.), for the proposition that an ALJ "must include a residual functional capacity assessment by a treating or examining physician." (Doc. 13 at 3). *Dillard* is not binding authority, *see United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."), and multiple judges of this Court have since disavowed *Dillard* and similar district court decisions for that particular proposition, including *Dillard*'s author. *See, e.g., Jones v. Colvin*, No. CA 14-00247-C, 2015 WL 5737156, at *24 (S.D. Ala. Sept. 30, 2015) (Cassady, M.J.) ("In her brief, Jones relies on one of this Court's prior decisions, *Dillard v. Astrue*, 834 F. Supp. 2d 1325 (S.D. Ala. 2011), for the proposition that the ALJ's RFC determination must be supported by the assessment of an examining or treating physician…In order to find that the ALJ's RFC assessment is supported by substantial evidence, however, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician…Therefore, the Court finds that Jones' reliance on *Dillard* is misguided, and her assertion that the ALJ's RFC determination must be supported by the assessment of an examining or treating physician is without merit."); *Pettaway v. Colvin*, No. CV 15-0640-C, 2017 WL 62649, at *7 (S.D. Ala. Jan. 5, 2017) (Cassady, M.J.); *Denton v. Berryhill*, No. CV 16-0423-MU, 2017 WL 3671164, at *12 (S.D. Ala. Aug. 24, 2017) (Murray, M.J.) (same); *Packer v. Astrue*, No. CIV.A. 11-0084-CG-N, 2013 WL 593497, at *2-3 (S.D. Ala. Feb. 14, 2013) (Granade, J.) ("[T]he Magistrate Judge cites *Coleman v. Barnhart*, 264 F. Supp. 2d

Williams next argues that the ALJ should have given controlling weight to the opinions of the treating physicians, Drs. Tao Chen and Juan Ronderos, because they are supported by the record.[10] "Absent 'good cause,' an ALJ is to give the

---

1007 (S.D. Ala. 2003), in which this Court found reversible error where an ALJ's determination was not directly supported by a treating or examining physician's physical capacities evaluation ('PCE'). However, the fact that no treating or examining source submitted such a statement in this case does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision."); *Braggs v. Colvin*, No. CV 15-00174-N, 2016 WL 1248917, at *8 n.11 (S.D. Ala. Mar. 29, 2016) (Nelson, M.J.) ("Braggs cites this Court's decision in *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003) (Granade, C.J.), for its holding that 'the Commissioner's fifth-step burden cannot be met by ... the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician.' 264 F. Supp. 2d at 1010. Coleman did not cite any Eleventh Circuit authority in support of this proposition…Moreover, this holding from Coleman has since been called into doubt." (citing *Packer*, 2013 WL 593497, at *2-3)); *Reed v. Berryhill*, No. CV 16-000090-B, 2017 WL 3977924, at *3 (S.D. Ala. Sept. 11, 2017) (Bivins, M.J.) ("At the outset, it should be noted that Plaintiff's contention that the ALJ's RFC assessment is not based on substantial evidence simply because the record is devoid of a formal RFC assessment by an examining medical source is incorrect. The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." (quotation omitted)). *But see Baker v. Colvin*, No. CV 16-0198-CG-M, 2016 WL 7662668, at *5 (S.D. Ala. Dec. 22, 2016) (Milling, M.J.), *report and recommendation adopted*, 2017 WL 71658 (S.D. Ala. Jan. 6, 2017) (no objections filed). In light of the Eleventh Circuit authority cited prior to this footnote, the undersigned is not persuaded to follow *Dillard* here.

[10] Williams also claims the ALJ improperly gave "no weight" to the "opinion" of treating physician Dr. James Edwards. However, the undersigned agrees with the Commissioner (*see* Doc. 14 at 5) that Dr. Edwards does not appear to have submitted a "medical opinion" that the ALJ was required to specially consider. The ALJ discussed Dr. Edwards's treatment notes in her decision (*see* R. 24, 31) but did not address any "opinion" by Dr. Edwards in considering the various medical opinions in the record. The three pages of Dr. Edwards's treatment records that Williams cites in her brief (R. 1953, 1956, 1973) simply recite various diagnoses and courses of treatment without offering any judgment on how those impairments affect Williams's ability to work, *see Winschel*, 631 F.3d at 1179 (explaining what

medical opinions of treating physicians 'substantial or considerable weight.' "
*Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).[11] *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.").

The ALJ gave Dr. Chen's opinion "little weight" because he "did not provide a

---

constitutes a "medical opinion"), and she otherwise fails to explain what "opinion" from Dr. Edwards the ALJ purportedly overlooked or improperly weighed.

[11] Williams appears to suggest that Social Security Ruling (SSR) 96-2p, which requires an ALJ to give "controlling weight" to a treating physician's opinion if the opinion "is well- supported and not inconsistent with the other substantial evidence in the case record[,]" is more restrictive of an ALJ's ability to reject treating opinions than the Eleventh Circuit's "good cause" standard. Even if it is, this Court is bound to apply circuit precedent over the SSR. *See Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 n.4 (11th Cir. 2011) (per curiam) (unpublished) ("Social Security Rulings are not binding on this Court. *See B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 1981); *see also Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (providing that we are bound by decisions issued by Unit B panels of the former Fifth Circuit). To the extent [an] SSR []conflicts with [circuit precedent], we are bound by [circuit precedent]."); *Baker v. Comm'r of Soc. Sec.*, No. 17-13850, 2018 WL 1733234, at *2 n.2 (11th Cir. Apr. 10, 2018) (per curiam) (unpublished) (SSR could not "supersede" circuit precedent "because it lacks the 'force and effect of the law.' " (quoting *Heckler v. Edwards*, 465 U.S. 870, 874 n.3 (1984))).

detailed explanation for his assessment," and because evidence, including Williams's activities of daily living, supported a contrary finding, with the ALJ noting specific examples. (*See* R. 33 – 34). All of these reasons are "good cause" to reject a treating physician's opinion. *See Winschel*, 631 F.3d at 1179; *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 806 (11th Cir. 2014) (per curiam) (unpublished) ("[E]vidence of Crow's daily activities also provided good cause to discount his treating physician's opinion." (citing Phillips, 357 F.3d at 1241)). The ALJ gave the "various opinions" of Dr. Ronderos "partial weight" because "they are temporary and postoperative recovery instructions not intended to be reflective of a long-term limitation," noting that "Dr. Ronderos released the claimant to follow up as needed with no recommendation for long term or permanent restrictions." (R. 34). In other words, the ALJ found that Dr. Ronderos's own treatment records did not support giving long-term effect to his opinions. This too was good cause. *Winschel*, 631 F.3d at 1179. Williams fails to acknowledge the ALJ's stated reasons for discounting the treating physicians' opinions and has made no showing why they are not supported by the record. At most, Williams cites some other evidence in the record bolstering those opinions.[12] However, "[w]here our limited review precludes re-weighing the evidence anew, *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996), and as the ALJ articulated specific reasons for failing to give [the treating

_____

[12] To the extent Williams argues that records submitted to the Appeals counsel provide "persuasive corroborating evidence" for the treating physicians' opinions (*see* Doc. 13 at 9), the Court cannot consider that evidence in determining whether the ALJ's decision is supported by substantial evidence. *See Falge*, 150 F.3d at 1324.

physicians'] opinion[s] controlling weight," the Court "find[s] no reversible error." *Moore*, 405 F.3d at 1212.

Finally, Williams argues that the ALJ should not have relied on the non-examining physicians' opinions because they "were made at a time when all medical evidence was not of record" and were thus "unsupported" and "premature." (Doc. 13 at 8).[13] However, the ALJ thoroughly summarized the record evidence in her decision and explained that she gave "great weight" to the non-examiner opinions because they were largely consistent with that evidence. (*See* R. 32 – 33). Thus, the ALJ adequately demonstrated that she considered other evidence in conjunction with the non-examiner opinions in reaching her RFC,[14] and Williams does not argue that this other evidence was insubstantial. Thus, she has failed to show reversible error in the ALJ's reliance on the non-examiner opinions.[15]

_____

[13] The ALJ also assigned "partial weight" to the opinion of consultative examiner Dr. Kenneth Starkey and articulated specific reasons why. (R. 33). As the Commissioner correctly notes (*see* Doc. 14 at 5), Williams makes some reference to Dr. Starkey's opinion in her brief but asserts no specific error in the ALJ's consideration of that opinion.

[14] *See Jarrett*, 422 F. App'x at 873 ("Regulations require that an ALJ consider the opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. See id. § 404.1527(d)(3)–(4); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(d)(4).").

[15] *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 740 (11th Cir. 2011) (per

Accordingly, the Court **OVERRULES** Williams's first and second claims of error.

###### b.      Fourth Claim of Error – VE Testimony

At Step Five, the ALJ, relying on the testimony of a vocational expert, found that Williams could perform the jobs of food prep work, mail clerk, and "folder, textile, or laundry," considering her age, education, work experience, and RFC, and that such jobs exist in significant numbers in the national economy. (R. 36). In her fourth claim of error, Williams asserts that the RFC "precludes the performance" of those jobs because the RFC limited Williams to standing and walking only four hours in an eight-hour workday, while the Dictionary of Occupational Titles (DOT)

---

curiam) (unpublished) ("A non-examining doctor's opinion that contradicts an examining doctor's medical report is accorded little weight and cannot, standing alone, constitute substantial evidence. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). However, the ALJ may rely on a non-examining physician's opinion if it does not contradict the examining physician's medical findings or test results in the medical report. *See id.* at 585…The ALJ articulated good cause for giving very little weight to the opinions of Drs. Raber and Lubin as to Flowers's RFC. Moreover, the ALJ was entitled to rely on Dr. Caldwell's opinion because it was consistent with the treating and examining physicians' underlying clinical findings. *See Edwards*, 937 F.2d at 584–85 (concluding that the ALJ properly relied on the consulting, non-examining doctor's opinion because it was not inconsistent with the results of the tests administered by the examining doctor and provided an interpretation of Edwards's limitations not found in the examining doctor's report). Thus, although an ALJ generally gives treating and examining physicians' opinions more weight, here the ALJ was not required to do so."); *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512–13 (11th Cir. 2011) (per curiam) (unpublished) ("Next, the ALJ did not err in giving more weight to Dr. Williams's opinion than to Kennedy's or Wood's opinions. The ALJ was not required to accord 'little weight' to Williams's report because it did not contradict Kennedy's treatment records or Wood's exam results. *Edwards*, 937 F.2d at 584…Furthermore, because Williams's opinions were consistent with Kennedy's and Wood's medical evidence, it is not Williams's report alone that constitutes the substantial evidence supporting the ALJ's decision. *See Edwards*, 937 F.2d at 584.").

lists each of those jobs as entailing "significant standing/walking." (Doc. 13 at 13).

Thus, she claims, the VE's testimony is inconsistent the DOT and therefore not

substantial evidence satisfying the Commissioner's Step Five Burden.

Even if the VE's testimony is inconsistent with the DOT, however, it is

settled law in this circuit that "when the VE's testimony conflicts with the DOT, the

VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th

Cir. 1999).[16] To the extent SSR 00-4p or the SSA's Production and Operations

Management Society (POMS) might provide otherwise, as Williams asserts, neither

of those documents permits this Court to disregard this clear precedent.[17] Because

---

[16] *Accord, e.g.*, *Mabrey v. Acting Comm'r of Soc. Sec. Admin.*, 724 F. App'x 726, 730 (11th Cir. 2018) (per curiam) (unpublished) ("Where there is conflict between the Dictionary of Occupational Titles ('DOT') and a vocational expert's testimony, an ALJ may rely solely on a vocational expert's testimony. See Jones v. Apfel, 190 F.3d 1224, 1226, 1229–30 (11th Cir. 1999)."); *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016) (per curiam) (unpublished) ("If there is a conflict between the DOT and the jobs identified by a vocational expert in response to the hypothetical question, the testimony of the vocational expert outweighs the DOT because the DOT is not the sole source of admissible information concerning jobs. Jones v. Apfel, 190 F.3d 1224, 1229–30 (11th Cir. 1999).").

[17] *See Baker*, 2018 WL 1733234, at *2 n.2 ("Baker asserts that a Social Security Administration ruling titled SSR 00-4p 'superseded' our Jones decision. That ruling cannot have superseded Jones because it lacks the force and effect of the law. Undeterred, Baker invites us to 'publish a written decision finding that [SSR 00-4p] is entitled to great respect and deference.' We cannot accept that invitation because we are bound to apply the rule from Jones unless it is overruled by the Supreme Court or by this Court sitting en banc." (citation and quotation omitted)); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x at 939 n.4 ("Jones cites SSR 00–4p, which provides that '[n]either the DOT nor the [VE's testimony] automatically "trumps" ' and instructs the ALJ to 'elicit a reasonable explanation' for a conflict between the two before relying on the VE's testimony. SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000). Social Security Rulings are not binding on this Court...To the extent SSR 00–4p conflicts with *Jones*, we are bound by *Jones*."); *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011) (per curiam) (unpublished) ("[W]e have

Williams has failed to show reversible error in the ALJ's reliance on the VE's testimony at Step Five,[18] her fourth claim of error is **OVERRULED**.

### c. Third Claim of Error – New Evidence to Appeals Council

> "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc., Sec. Admin.,* 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). But the Appeals Council "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram,* 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

*Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam).

In its order denying Williams's request for review of the ALJ's decision, the Appeals Council explained that the additional evidence she submitted to it – 14 pages of "medical records from Sacred Heart Medical Group dated March 15, 2016 through May 4, 2016" (R. 2; *see also* R. 44 – 57) – "does not show a reasonable

---

stated that, although the SSA's POMS can be persuasive, it does not have the force of law. *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003)…[T]herefore, the Commissioner's alleged failure to adhere to the POMS does not entitle Wells to child's insurance benefits.").

[18] At the ALJ hearing, the VE reduced his estimated number of available jobs by 20 percent "for purposes of making accommodation for the four hours of standing." (R. 84). Williams complains that "it is unclear whether the Vocational Expert is reducing the number to provide a sit/stand option or a standing/walking limitation, as is described in the RFC." (Doc. 13 at 13). The undersigned rejects Williams's attempt to manufacture ambiguity; the ALJ's hypothetical preceding the VE's response clearly asked the VE to assume, *inter alia*, an individual for whom "standing and walking is limited to four hours, total, in an eight hour workday." (R. 84). Moreover, the undersigned agrees with the Commissioner that Williams is not clear as to how this purported ambiguity constitutes reversible error.

probability that it would change the outcome of the decision" (i.e., that the new evidence was not "material"[19]); therefore, the Appeals Council "did not consider and exhibit this evidence." (R. 2). When, as here, " 'the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is ... subject to judicial review....' " *Washington*, 806 F.3d at 1320 (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our *de novo* review." *Id.* at 1321 (quotation omitted). Therefore, "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.*[20]

---

[19] *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result").

[20]     The case law relied on by both Williams and the Commissioner in briefing this claim is inapposite. As in *Washington*, "[t]his is not a case in which the Appeals Council considered the additional evidence and then denied review. When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rational for denying review.' *Mitchell v. Comm'r, Soc., Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014). But we are addressing a different issue in this case: whether the Appeals Council committed legal error when it refused to consider the claimant's additional evidence." 806 F.3d at 1321 n.5.

    Because judicial review of such a refusal is *de novo*, the Court owes no deference to the Appeals Council's factual or legal determinations underlying the refusal. Therefore, Williams's suggestion that the Appeals Council should be required, as an additional matter of law, to provide a detailed explanation for its refusal makes little practical sense. To the extent Williams claims that *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), requires such a detailed explanation, the Eleventh Circuit has observed that "*Epps* has little bearing on a denial of a request for review" because "the decision in *Epps* arose in a different procedural context, where the Appeals Council affirmed the decision of the administrative law judge." *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 853 (11th Cir. 2015)

In arguing that the additional evidence she submitted to the Appeals Council is material, Williams directs attention to the following portion of the ALJ's decision, which immediately follows the ALJ's discussion of Dr. Ronderos's opinions:

> At the claimant's first pain management visit after surgery in April 2015, a nurse practitioner documents "lumbar failed back surgery" apparently based on claimant's subjective report of symptoms. [(R. 1876)]. This notation repeats later in the pain management notes and may have been endorsed by a treating or examining physician or simply copied from earlier to later progress notes. To the extent this notation expresses an opinion or suggests greater limitation than included in the residual functional capacity, it is assigned little weight because there is no persuasive corroborating evidence for this assessment in Pinnacle neurosurgical records, physical therapy records, or even in the pain management notes. The objective findings documented by Dr. Ronderos at post-surgical examinations and the claimant's gradually increased ability to work out for longer periods at the gym as documented in physical therapy records, go canoeing and travel 14 hours to help a friend, strongly suggests her back surgery is not "failed."

(R. 34). Williams appears to suggest that the new evidence corroborates the nurse practitioner's "lumbar failed back surgery" notation. While the undersigned agrees, Williams fails to convince the undersigned that the Appeals Council erred in finding the new evidence to be immaterial.

The new evidence consists of treatment notes from four visits with the Sacred Heart Medical Group in 2016. At the first, occurring March 15, 2016, Dr. Ronderos documented Williams's complaints of pain in her back, buttocks, and lower extremities. (R. 53). After noting "normal" findings on physical exam, Dr. Ronderos

---

(citing *Mitchell v. Comm'r, Soc., Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014)) (quotation omitted).

set Williams for surgery to remove a left pedicle screw (discovered through a lumbosacral spine CT) and imposed certain working restrictions: "unable to work for: 3-6 weeks[;] no maximum lifting over 20 pounds[;] alternate sitting/standing, may walk short distances." (R. 55). At the second visit, occurring March 29, 2016, Dr. Ronderos again documented "normal" physical exam findings, reiterated that Williams was set for surgery for "removal [of] Left sided hardware," and stated she would be "unable to work for: 4 weeks." (R. 51 - 52). He also assessed Williams with "failed back syndrome" and "low back pain." (R. 51).

At the third visit, occurring April 13, 2016, ten days following Williams's surgery, examiner Kevin Hites noted that Williams was "healing well" and that she "will keep her follow up appt." (R. 47 – 48). Hites also assessed her with "low back pain." (R. 48). At the last visit, on May 4, 2016, Dr. Ronderos again documented "normal" physical exam findings, and assessed "low back pain," "failed back syndrome," and "hyperlipidemia." (R. 46). Dr. Ronderos also noted there were "no surgical options available for" Williams and discharged her from care, recommending that she "continue with current medications as prescribed" by her physicians and opining that her "pain can be addressed with conservative measures at this time." (R. 46).

The ALJ made clear that her decision to specially address the nurse practitioner's April 2015 notation of "lumbar failed back surgery," and to treat it as a possible medical opinion, was made out of an abundance of caution because the ALJ could find no objective record evidence to corroborate that diagnosis. While the

new evidence submitted to the Appeals Council does provide the corroboration that was lacking with the ALJ, it also shows that the ALJ need not have specially addressed the nurse practitioner's notation as a medical opinion. Moreover, the new evidence consistently documented "normal" physical findings, and as with Dr. Ronderos's 2015 opinions that the ALJ addressed in her decision, they provided "temporary and postoperative recovery instructions not intended to be reflective of a long-term limitation." (R. 34). Finally, the new evidence is consistent with the ALJ's finding that "[t]he objective findings documented by Dr. Ronderos at post-surgical examinations" and Williams's post-surgery activities of daily living "strongly suggests her back surgery is not 'failed.'" (R. 34).

Williams has not shown that there is a reasonable possibility the evidence submitted to the Appeals Council would have changed the ALJ's decision. Accordingly, the Appeals Council did not err in declining to consider it, and the Court **OVERRULES** Williams's third claim of error. Having overruled all claims of error raised, the Court therefore finds that the Commissioner's final decision denying Williams benefits is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's decision Williams's application for a period of disability and DIB, made final by the Appeals Council's denial of review on June 29, 2017, is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and

Federal Rule of Civil Procedure 58.

     **DONE** and **ORDERED** this the 2nd day of July 2018.

                            */s/ Katherine P. Nelson*
                            **KATHERINE P. NELSON**
                            **UNITED STATES MAGISTRATE JUDGE**